You may proceed and you don't need to have your mask on at the podium. Thank you very much. Good morning, Your Honor. My name is Marjorie Bronster and I represent Hawaii Pacific Teleport, which I will refer to as HPT, and I must say it is a great honor and pleasure to be actually standing here before you today. We're happy to see lawyers back in the court. The reason we're here today, and I would like to reserve five minutes of my time, but the reason we're here today is to ask this court to reverse the lower court and vacate the arbitration award based both on the manifest disregard of the law as well as the irrational outcome. But before I do that, I believe that I need to, with due respect, tell you that we don't believe that this court has jurisdiction over this matter. And the question of jurisdiction under 1332 is whether or not the award at issue here, an award of zero damages, meets the jurisdictional threshold of 75,000. The lower court had absolutely no problem in concluding that it did. And the reason we believe that the analysis is a two-part approach given the circumstances here. The first one under Thijs is whether or not the appellant, and that is HPT, asked to reopen the arbitration, which it did not. It simply asked for a vacator. And therefore, you would look at the amount of the award. If that were all there was, we'd be done. But there was a $1.5 million attorney's fees and costs. For some Thijs, they hadn't asked to reopen, but they found a functional equivalent, right? They found a functional equivalent because of the companion lawsuit. So there had been a complaint that was filed as well as the appeal of the arbitration. And they looked at the complaint language, and they said because the complaint was seeking $2 million, that it was the equivalent of seeking to reopen. And how does the functional analysis apply here in your opinion? I'm sorry? Functional equivalent analysis. How does that apply here in your opinion? Well, we don't believe that the functional equivalent should apply here because I think that if you look at what the award is and you see that it's zero, under Thijs, I think that the court would have found that the award is what you look at. But I think that we do need to reach the question of attorney's fees. And the question is whether under New York law, not California law, under New York law, whether the attorney's fees constituted costs or whether they were required by statute or whether they would be damages under New York law. And New York law does not have a statute. So we're not in the Galt situation. And therefore, you have to look at the contract. And the contract between HPT and Periton specifically said that attorney's fees would be considered as costs. So when they were defining the ability to collect costs, they were considering receiving costs and including attorney's fees. So under New York law, the $1.5 million constitutes costs. And if you take a look at the costs under 1332, you end up with a conclusion that costs are excluded, the understanding, of course, that you may not agree with me. I do want to reach the merits of the argument unless you have any questions about the jurisdictional issues. No, it's an interesting issue. But go ahead with your second one. There are two approaches that warrant vacatur. One is completely irrational decisions. And the test there is an arbitration award is completely irrational when it fails to draw its essence from the agreement read as a whole in the context of the intent of the parties. We believe that the arbitrator here completely ignored the essence of this contract. The essence of the contract was relatively simple. HPT agreed to provide bandwidth and Periton agreed to pay for it. That was completely missed in the arbitration award and the decision below. When you look at the limitation provision, it was taken out of context. It was taken and read as though it were the only provision between the parties. But when you're trying to look at a contextual analysis, you must look, as I said, at the decision as a whole. So why would there be all of these provisions to require payment, to require that an arbitration only proceed if there's more than $25,000 that is at issue? Why would there be provisions in the addendum that says you must pay? And on and on and on. There are so many provisions that talk about the amounts at issue. And yet, this arbitrator would say that no matter what the amount at issue, no matter what the amount of the termination fee that had to be paid, there is no way to collect at all. That, we believe, shows that he completely ignored the essence of the agreement. And we believe that this is akin to ASPIC, where the arbitrator specifically ignored the provisions in order to get to his decision. I guess the question, I'm looking at the language here where the arbitrator says that the language that you rely on in the service agreement does not address limitation of liability issues or override detailed provisions on that topic. And then he sets forth the citation to the various provisions of the CSA. If standard is really, you know, whether reasonable minds could know, but we might view it differently, what's the basis, then, to overturn or tip the award or determine a decision? Well, I think you have to step back and look at, as the BOSAC case says, as ASPIC says, the essence of the contract. And there is no way to suggest that there's any rational reading of this contract in finding, in following the conclusion of the arbitrator. And it's interesting because Comedy Club, too, actually addressed this question. They said, you're not supposed to look at whether the award is irrational and completely irrational. You're supposed to look at whether the award misses the essence of the contract from the contract's standpoint. And that's what we believe happened here, that you cannot read this contract and ignore 5.3, where Perrotton had to remit money, 4.1, where Perrotton was liable, regardless of whether they used the termination provision, 6.1, what happened on an event of default. And he ignored each and every one of those provisions, which ultimately rendered the contract unenforceable and gave no remedy whatsoever to HPT. Now, he had a lot of words to get there, but it was completely irrational, given the thing that was wrong with the decision below is the fact that the judge conflated the completely irrational standard with the manifest disregard of the law. I believe that the Ninth Circuit cases suggest and show that they really should be dealt with as two separate analysis. So I do want to take a moment to talk about the manifest disregard of the law. This arbitrator set out New York law, set out the need to look at everything in context, and more importantly, set out the law on ambiguity properly. Another example of how he ignored New York law in applying this, but probably the most way in which he ignored the law, is he set out New York law in paragraph 70 of the award, and in paragraph 69, he said a contract is ambiguous if there is more than one reasonable interpretation in the context of the entire agreement. And in his interim award, at paragraphs 58 and 59, he had to determine whether this was a case that would warrant going forward to see whether there was more than $25,000 at issue. And what he said, months and months before he ever went and had the hearing, was that reasonable people could differ. He specifically said in two instances, in paragraph 58, 57 and 58 of the interim award, that HPT was reasonable in believing it wasn't a complete bar to recovery, and yet he went and ignored it. That has to be a manifest disregard of the law. He stated what the law on ambiguity was, and he ignored it. I'm having a little trouble parsing that. I mean, he's looking at the outset. Is there jurisdiction? Reasonable people could disagree. We're going to have jurisdiction, and so that's where you end up. And then you're saying down the road, he ignores the fact that reasonable people could disagree about the legal obligation? No. Therefore, he abdicates, he abdicates in his decision? No. What he did was, he said that reasonable people could differ, and therefore, it would be ambiguous. However, when he went into his award, he said, it is completely unambiguous. And so he didn't have to take in the additional evidence, get the parole evidence, look at it in context of all of the other cases, or apply the New York law on the interpretation of contracts. And that was manifest disregard. I understand that you disagree with his interpretation of the law at that point, in terms of his application, but are you saying that he was stuck with the statement he made earlier? Is that really what you're trying to impose? No. And I may not be stating it clearly. What I'm trying to say is that he got the law right. He said when there's an ambiguity, he's got to do all of these things. And he saw an ambiguity when he issued his interim award. And then he completely ignored the law and his findings, and went ahead and said that there's absolutely no ambiguity. I'd like to reserve if I may. Thank you. Good morning. Nick DePalma on behalf of Periton Government Communications, Inc. And you may remove the mask, if you wish, at the podium. Thank you, Your Honor. Still Nick DePalma on behalf of Periton. So I'd like to take this in three bites, if I may. The first would be the subject matter jurisdiction question. The second would be the question of whether the award should have been vacated or confirmed, and the standard for that. And then the third would be the question, which was the issue of whether Periton should receive its fees in connection with confirmation proceedings. So on the first one, subject matter jurisdiction, Judge Seabright was correct on this. There are two ways that one could look at this. One is, what's the value of the award in terms of the demand? HPT sought $8.7 million from Periton. Therefore, the award was one way to look at that. The demand theory is $8.7 million, because it defeated that claim. A second way to look at it is the value of the award itself. In this case, the award awarded Periton $1.5 million of attorney's fees and costs. Therefore, the value of the award is $1.5 million. Now, HPT has argued a theory where people can exclude certain categories of money in the award because it might be a cost or a fee. That exclusionary principle doesn't have a foundation in the case law. We pointed out in our opening brief, under New York law, Perez v. Foremost, that's a Western District of New York case. That is a New York court following the McLean case, the Tenth Circuit case. And what the Tenth Circuit said, and every court of which we are aware has followed that ruling, is that the diversity language in 1332 is prospective costs, meaning a litigant can't base federal jurisdiction on costs it expects to get in the federal case. But at the moment that we had the scenario, we were well ahead of the $75,000 in costs. Moving to the question of confirmation or vacation, I think we're all on the same page. How do you respond to the argument that under New York law, as applied to this case, that the costs were excludable? Sure, Your Honor. Under New York law, the cases that were cited for the proposition that costs are excludable have nothing to do with the amount of controversy requirement. The amount of controversy requirement asks, what's the amount at issue? So if the amount at issue is $1.5 million in costs that have been incurred and are awarded, then that satisfies that. There's no basis to back those out. And that's why specifically we cited the Perez case, which is a New York court following the McLean case in the Tenth Circuit in 1979. If we had said hypothetically the award was $60,000 and we think it's going to cost us at least $15,000 to confirm it, and that's how we get to our federal controversy, then we're out, then I agree. But this is the second it's part of an award, it is now the amount of controversy under even the most restrictive reading of the diversity statute. Okay, go ahead. Thank you. In connection with the review about confirmation and vacation, we start with Cayo Serra. This court's really in Cayo Serra. And this court in Cayo Serra said arbitration gets extremely limited review. I believe Judge McEwen had said, this isn't de novo. It's not like we're reviewing a district court on appeal. It's extraordinarily limited. It doesn't pick up misinterpretations of law. It only picks up something that is literally completely irrational or a manifest disregard. And those two elements don't stand alone. That's part of the fourth prong of the FAA, that the arbitrator exceeded his powers. What does that mean? Completely irrational, manifest disregard. And we say, here the arbitrator looked at the carrier services agreement. And the arbitrator applied a limitation of liability to limit liability. Each of the preceding provisions, the 6.1, these other provisions, would constitute a breach or non-performance, which is expressly provided for and contemplated in the limitation of liability. And I make one note on that. Paragraph 75 of the arbitral award and paragraph 80 of the arbitral award, the arbitrator actually focused on New York cases where someone has a cause of action for non-payment and a limitation of liability. One of the foremost cases on there was the technical services versus IBM case, which we cited and the arbitrator cited frequently. That's the excerpt of record 319 and the excerpt of record 320. And actually 321 to get to paragraph 80. And the arbitrator has literally five cases in paragraph 75, DynCorp, Metropolitan, and he closes with this technical services versus IBM case. Each one of those cases applied New York law in an analogous situation. There's a right to payment. There's a limitation of liability. And the reason I focus on technical services is because that actually had a software agreement and then a purchase order under it, much like here we have a carrier service agreement and then a service order under it. And the software agreement had the broad limitation of liability and the purchase order, like here, had a right to payment. And the New York law, just like all of the New York courts applying New York law in that provision said, this is the, you know, the appellant also asserts that the purchase order takes precedence over the CSA in the event of a conflict, but never shows any conflict between the documents. And since neither the purchase order nor the statement of work address limitations of liability at all, there is no conflict with the limitation of liability. That's from technical services. So the arbitrator followed that. He felt actually constrained by New York law to apply the limitation of liability. And I point out that nowhere in the appellant's brief does it in any way mention those five cases. They're just not cited. So there's an attempt to say New York law has surplusage. We give effect to the parties. There's contractual canons. And then there's an argument that the arbitrator got it wrong, but there's not an attempt to actually address the And I think given that, that speaks volumes to the fact that it's not completely irrational or a manifest disregard. And frankly, I think the arbitrator got it right. Now, I do want to focus on two cases that appellant mentioned from this court, ASPIC and Comedy Club, because both of those cases vacate awards. And the phrase I've come up with for that is that those cases are the exception that proves the rule, that proves how limited review is of a subcontractor in Afghanistan that had a contract with a subcontractor that incorporated provisions of the federal acquisition regulation. That is onerous. That requires folks who perform services for the United States government to comply with a number of reporting requirements. The subcontractor did not comply with those reporting requirements. And the arbitrator found, one, the contract requires compliance with the FAR. Two, the subcontractor did not it wouldn't be fair to require them to comply with the contract, because I don't think Afghanistan subcontractors can comply with the FAR, so I'm going to excuse that requirement. That is the exception proving the rule, where an arbitrator said, the contract requires this, but I'm not going to follow it. That's not what happened here. Here, the arbitrator said the contract requires this, and I am going to follow it. And that's why he applied the limitation of liability. In Comedy Club, you had competing comedy clubs and a non- competition covenant that was subject to arbitration. And the arbitrator applying California law enforced a non-compete against not only signatories of the agreement, but also their spouses and folks who hadn't even signed it. So it went way beyond his authority in applying that award. That award was also vacated, at least that portion of it. Again, it's the exception proving the rule of how limited this is. And what I'd like to do, unless there are other questions on those points, I'd like to move to the question of fees and confirmation proceedings. So in connection with fees, this is a question that's reviewed de novo. Unlike the question about whether the arbitrator got it right, which is subject to extraordinarily deferential and limited review, this one is looked at fresh. And the issue is, under Section 16 of the agreement between the parties, is Periton entitled to fees for confirmation proceedings. The court below found that we were not. And what I'd like to do is focus on the language of the contract and then the law that has addressed this issue in the past, including from this court, although this court's decision on that issue was unpublished previously in the SCIE case. So the language under Section 16.3 provides for fees for arbitration proceedings, and it specifically says that this will survive and become part of the judgment. And the entirety of 16 also mentions confirming awards and obtaining judgments. So it makes sense that Section 16.3 would cover confirmation proceedings because arbitral awards are not self-executing. When one gets an arbitral award, one cannot collect on it. One cannot levy a judgment or seize assets. The arbitral award, it does not become a judgment unless until it's confirmed. That's why the Brown v. Brown-Thill case, I believe, specifically mentions that confirmation proceedings are part of arbitration. They're the end. So here you have Section 16 contemplating a judgment and fee shifting. And you have on that language, we argue, we're entitled to get fees for confirmation proceedings, for a defending vacation, and for defending the confirmation on this appeal. And that's a plain language argument. And then we look at what's this court done in the past. And what this court has done in the past in an unpublished opinion called SCIE, which I don't know if that's S-C-I-E or SCIE. We debated that, and I don't have an answer yet. But what the court said there is under California law, if you get fees in arbitration, you get fees for confirmation. It's that simple. That makes a lot of sense because, like we said, arbitral awards are not self-enforcing. You have to come to court to finish the process. So what was the fee provision in that case? Was it the exact same language that talked about arbitration proceeding, or was it different? It would not have been the exact same, but it would have been pretty close. And if I recall correctly, we actually gave a chart of language where courts had shifted fees for confirmation proceedings in our reply brief. Let me just make sure that I've got that correctly. Here we go. Peritone reply brief. So in SCIE, the language was... And I apologize. We have the chart of cases, although every case except SCIE is on page 6 of the reply brief. And then SCIE was... Your Honor, I'm recalling SCIE was attorneys' fees and costs for arbitration proceedings. I think it was almost identical. Well, you could argue it's identical. I think it's a close question here, and there's intuitive sense that you get the fees all the way to the end. Okay. On the other hand, there's the contractual issue. So here it talks about an arbitration proceeding in the singular. And so the question is, what was the arbitration proceeding? And that is, of course, the proceeding before the arbitrator. And would it have been different if it said arbitration proceedings, plural, which would suggest that it's something beyond a singular arbitration proceeding? I would argue that... Well, first, I did find the SCIE language. SCIE was the prevailing party shall be entitled to reimbursement of all costs and expenses, including reasonable attorneys' fees. And it was right after the contemplation of arbitration of disputes. So it's different language. I mean, of course, we understand the import of these non-precedential opinions, and this is precisely the reason for that, because, of course, statutory... I mean, the contract language may be controlling, unless we know what the contract language is and how it's interpreted. So I guess I'll just stick to this case and the fee statement here, which is a such arbitration proceeding. So I agree with you, Judge McKeown. Let me say that. I think this language is different from SCIE. The way I would respond to your question on Section 16.3 is I would say there's actually a Section 16 that refers to dispute resolution, and 16.3 is the last part of that, but it all works together. 16.1 said all disputes will be submitted to the ICC. 16.2 said the award shall be final and binding. Neither party has the right to appeal or reject, except for purposes of obtaining the judgment. So 16.2 is judgment, and then 16.3 says the parties agree that prevailing parties shall be entitled to cover all reasonable costs and expenses of such arbitration proceeding, as well as all costs, and expressly says this shall be severable from other provisions and shall survive and shall be merged into any judgment, meaning that if you think about Section 16 as the arbitral proceedings, instead of just 16.2, then 16.3 applies to everything on its face. Being broader. Being broader, right. If you had Section 16.1, and then you said, because this was similar to the cross-point case that the appellant relies to, if you had the fees just in Section 16.1, then there would be a better textual argument that fees only apply to the actual ICC arbitration. But when you have 16.1 talking about the arbitration, 16.2 talking about a judgment, and then 16.3 saying you get fees for the proceeding, it tells me that on a textual analysis that applies to Section 16 as a whole. And I did point out, I agree with you that SI is unpublished, but I think the reasoning is right. What do you make of the fact that it's based on California law and not New York law? Nothing in this instance, Your Honor. Why? Because I've looked at all of the cases from all of the jurisdictions that have talked about this where a court awarded fees for confirmation proceedings, and I've looked at what the arbitral language was that they awarded it, and it's all on page 6 of our reply brief. And it all looks the same. It doesn't look like there would be a different outcome. Thank you, counsel. Thank you so much. Your rebuttal. Thank you. Let me start with SCIE. I believe that with respect to the attorney's fees, SCIE is irrelevant because California law specifies that you're entitled to the fees on an appeal of arbitration. The language is completely different. It does not even refer to arbitration, and the court relied on the California statute. None of that applies here because we're under New York law, and there is no such statute. I also disagree that this is a de novo review because the court wasn't interpreting the law. He was interpreting the contract, and as such, it is not the de novo review because he's just interpreting how the contract was reading. So the de novo review is appropriate when he's interpreting the law. With respect to- Well, isn't that a legal judgment interpretation of the contract? I believe it was abuse of discretion in how he saw it working. With respect to the prospective costs and the Perez case, we don't believe that the statute, 1332, mentions the word prospective. So I think adding an additional concept that you have to be looking at prospective law doesn't work. And finally, vacating awards, arbitration awards, is unusual, but we believe that this case is a poster child for why we have exceptions. For this arbitrator to say you can never recover anything and then turn around and give $1.5 million in fees seems completely irrational, particularly when there is no ability to ever receive any fees if you read the arbitration award as a whole. He completely ignores the essence of this contract between Perriton and HPT. Accordingly, we would request that you vacate the award. Thank you. Thank you, counsel. Thank both of you for your arguments today. Very helpful to the court. And the case history will be submitted for decision.
judges: WALLACE, THOMAS, McKEOWN